## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **DONALD DACE AND SUSAN DACE,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Case No.: _____** |
| **vs.** ) | |
| ) | |
| **JOSEPH BARTHOLOMEW, and** ) | **JURY TRIAL DEMANDED** |
| **HRANT NORSIGIAN, JR.,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

NOW COME the Plaintiffs, Donald Dace and Susan Dace, by their attorneys Reinert &

Rourke P.C., and for their complaint against the Defendants state:

## PARTIES

1.     Donald Dace and Susan Dace ("Daces") presently and at all times relevant to this

action are husband and wife and citizens of the State of Missouri residing in St. Louis County,

Missouri.

2.     Upon information and belief, Joseph A. Bartholomew ("Bartholomew") presently

and at all times relevant to this action, is an attorney licensed to practice and currently practicing

law in the State of Missouri and is a citizen of the State of Illinois.

3.     Upon information and belief, Hrant Norsigian, Jr. ("Norsigian") presently and at

all times relevant to this action, is an attorney licensed to practice and currently practicing law in

the State of Missouri and is a citizen of the State of Illinois.

## JURISDICTION

4.     This Court has jurisdiction over the claims asserted by the Plaintiffs against the
Defendants pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship
between all Defendants and all Plaintiffs and the amount in controversy exceeds $75,000,
exclusive of interest and costs.

5.     The value of the Daces' claims lost as a result of Defendants' misconduct includes,
without limitation, approximately $160,000 in medical expenses and over $1 million in past and
future lost wages. Therefore, Plaintiffs' claims against the Defendants substantially exceed the
jurisdictional amount of $75,000, exclusive of interest and costs.

## VENUE

6.     Venue is proper in this Court under 28 U.S.C. §1391(a) (2) because a substantial
part of the events or omissions giving rise to the claims of the Plaintiffs against the Defendants
occurred in the course of the Defendants providing legal representation to the Plaintiffs in the
Circuit Courts of St. Louis City and St. Louis County in the Federal Court District known as the
Eastern District of Missouri. The "Contract For Legal Services" under which the Defendants
were representing the Daces when they engaged in their misconduct was entered into at the
Daces' residence in St. Louis County in the federal Eastern District of Missouri. In addition, the
underlying medical malpractice committed against Donald Dace for which the Defendants were
representing the Daces occurred in St. Louis County in the federal Eastern District of Missouri.

## COMMON FACTS

7.     During February through May 1998, Donald Dace was misdiagnosed and
improperly treated by various medical practitioners for the medical condition of ruptured

- 2 -

diverticulitis upon presenting himself at the emergency room of Missouri Baptist Hospital in St. Louis County, Missouri.

8. In 1998, Defendant Norsigian agreed to pay attorney Larry Parres of the Lewis, Rice, Fingersh P.C. law firm in St. Louis a percent of any fees earned in exchange for his referral of the Daces as potential medical malpractice clients.

9. Defendant Norsigian did not disclose to the Daces his fee sharing agreement with Attorney Parres.

10. Prior to July 1998, Defendant Norsigian had never participated in the preparation for or trial of a medical malpractice case.

11. On July 22, 1998, Defendant Norsigian traveled to the residence of the Daces in St. Louis County, Missouri and persuaded Donald Dace to execute and enter into a "Contract For Legal Services" wherein Defendant Norsigian agreed to provide competent representation of Donald Dace on his claim for damages resulting from medical malpractice committed against him in exchange for receiving 33 1/3% or any recovery.

12. In persuading Donald Dace to enter into a written "Contract For Legal Services", Defendant Norsigian did not disclose to Donald Dace that the scope of the representation he was contracting for was either limited or conditioned on his lawsuit being filed in the Circuit Court of St. Louis City and not being subsequently transferred to the Circuit Court of St. Louis County.

13. On July 22, 1998, Defendant Norsigian was an associate in a law firm that did not permit attorneys employed by it to engage in medical malpractice litigation.

14. Defendant Norsigian, in persuading Donald Dace to enter into a "Contract For Legal Services" employing his legal services to represent him on his medical malpractice claim,

- 3 -

did not disclose to the Daces that he was employed by a law firm that did not permit him to handle medical malpractice litigation.

15. Prior to July 22, 1998, Defendant Norsigian referred all his medical malpractice clients to Defendant Bartholomew in exchange for payment of a percentage of any fees recovered.

16. In persuading the Donald Dace to enter into a "Contract For Legal Services", Defendant Norsigian did not disclose to Donald Dace that he had previously referred all prior medical malpractice clients to Defendant Bartholomew and had not actively participated in the preparation for or trial of those clients' cases.

17. Prior to July 22, 1998, Defendant Bartholomew instructed Defendant Norsigian on how to draft his fee agreements in a manner to permit him to refer his medical malpractice cases to Defendant Bartholomew.

18. In persuading Donald Dace to enter into a written "Contract For Legal Services", Defendant Norsigian did not disclose to the Daces that the contract was drafted in a manner to enable Defendant Norsigian to refer the Daces' claims to Defendant Bartholomew.

19. When Defendant Norsigian met with Donald Dace on July 22, 1998 to persuade him to enter into a "Contract For Legal Services", he knew that Donald Dace was still suffering from his medical malpractice ordeal and was in an extremely weakened condition physically, emotionally, and psychologically.

20. After contracting with Donald Dace on July 22, 1998, Defendant Norsigian did little or no work developing or handling the medical malpractice claim of Donald Dace.

21. On or about 1999, Defendant Norsigian persuaded the Daces to permit him to

- 4 -

invite Defendant Bartholomew to participate in representing the Daces on their claims.

22. Defendant Norsigian set up a meeting attended by himself, Defendant Bartholomew and the Daces ("Bartholomew Meeting") at which meeting Defendant Bartholomew persuaded the Daces to permit him to review their claims and to participate in their representation if he concluded Donald Dace had a valid and collectible medical malpractice claim.

23. At the Bartholomew Meeting, Defendant Bartholomew represented to the Daces that he would assist Defendant Norsigian in representing them on their claims if they consented to his participation in their representation and if, after reviewing their case and obtaining expert medical consultation, he believed their claims were valid and collectible.

24. At the Bartholomew Meeting, Defendant Bartholomew represented to the Daces that if they agreed to permit him to assist Defendant Norsigian in representing them on their claims that he and Defendant Norsigian would work on their case together and share responsibilities.

25. In persuading the Daces to consent to the additional representation by Defendant Bartholomew, Defendant Norsigian did not disclose to the Daces that Defendant Bartholomew's representation of them was conditioned upon the court not ordering the transfer of their case to a legally appropriate venue if filed in a legally inappropriate venue, as required by law.

26. In persuading the Daces to permit him to participate in their representation, Defendant Bartholomew did not disclose to Defendant Norsigian that his representation of the Daces was conditioned upon the court not ordering the transfer of their case to a legally appropriate venue if filed in a legally inappropriate venue, as required by law.

- 5 -

27.     Defendant Bartholomew did not enter into a fee agreement with Donald Dace separate from the July 22, 1998 "Contract For Legal Services" between Donald Dace and Defendant Norsigian, but represented the Daces under that same Contract.

28.     Neither Defendant Bartholomew nor Defendant Norsigian documented in their respective office files or confirmed in writing to the Daces that they disclosed to the Daces that Defendant Bartholomew's representation was conditioned upon the court not ordering the transfer of their case to a legally appropriate venue if filed in a legally inappropriate venue, as required by law.

29.     Neither Defendant Bartholomew nor Defendant Norsigian documented in their respective office files or confirmed in writing to the Daces that they disclosed to the Daces that Defendant Bartholomew would withdraw from and voluntarily dismiss the Daces' case if it was filed in a legally inappropriate venue and ordered by the Court to be transferred to the legally appropriate venue, as required by law.

30.     Neither Defendant Bartholomew nor Defendant Norsigian documented in their respective office files or confirmed in writing to the Daces that the Daces consented to any limitation on the scope of the Defendants' representation not otherwise stated in the July 22, 1998 "Contract For Legal Services".

31.     Neither Defendant Bartholomew nor Defendant Norsigian documented in their respective office files or confirmed in writing to the Daces that they obtained the consent of the Daces to limit the scope of their representation on the Daces' claims arising out of the medical malpractice committed against Donald Dace not otherwise stated in the July 22, 1998 "Contract For Legal Services".

32.     In persuading the Daces to consent to the participation of Defendant Bartholomew in their representation, Defendant Norsigian did not disclose to the Daces or document in their respective office files that Defendant Bartholomew would withdraw as their attorney and dismiss their case if Defendant Bartholomew filed the case in a legally inappropriate venue and the court ordered their case to be transferred to the legally appropriate venue, as required by law.

33.     After Defendants persuaded the Daces to permit Defendant Bartholomew to participate in their representation, Defendant Norsigian and Donald Dace did not mutually void or terminate the July 22, 1998 "Contract For Legal Services" until February 21, 2002.

34.     Prior to and after the Defendants persuaded the Daces to consent to Defendant Bartholomew participating in their representation, the Defendants did not disclose to the Daces or document in their respective office files the specific economic benefit each Defendant would receive or the specific responsibilities that each Defendant would assume in representing the Daces.

35.     After Defendant Bartholomew began to participate in representing the Daces, the Defendants did not disclose to the Daces or document in their respective office files that Defendant Norsigian was not actively participating in the preparation of their case for trial or sharing in the case handling responsibilities with Defendant Bartholomew to ensure that the Daces' were competently represented.

36.     Defendant Bartholomew agreed to file suit on behalf of the Daces when his review of the medical issues in consultation with his retained surgical expert, Dr. Alan Baker, led him to conclude that the Daces had valid and collectible claims arising from the medical malpractice committed against Donald Dace.

37.    Dr. Alan Baker informed Defendant Bartholomew that the malpractice committed against Donald Dace included, without limitation, numerous unnecessary abdominal surgeries and amputations of internal organs.

38.    At the time of Defendant Bartholomew's filing of the Petition on behalf of the Daces, Donald Dace had a valid claim for medical malpractice or negligence that was collectible against one or more of the following medical providers for misdiagnosis or mistreatment of Donald Dace's condition of ruptured diverticulitis: Mark Ludwig, M.D.; Parkcrest Surgical Associates, Inc.; Narsreen Qazi, M.D.; Parkway Pathology Group, Inc.; Walter G. Holloman, M.D.; Steven Solomon, M.D.; Midwest Radiology, Inc.; (hereinafter collectively the "Medical Malpractice Defendants").

39.    Defendant Bartholomew on about February 10, 2000 filed a Petition on behalf of the Daces in the Circuit Court of the City of St. Louis, Missouri, against the Medical Malpractice Defendants, to which the Circuit Clerk assigned the case number 002-00396.

40.    After the Petition was filed on behalf of the Daces, Defendant Norsigian did not actively monitor or otherwise assist, participate, or assume responsibilities in the handling of the Daces' case.

41.    Defendants never confirmed in writing to the Daces or documented in their respective office files that Donald Dace consented to an amendment to the July 22, 1998 "Contract For Legal Services" between Defendant Norsigian and Donald Dace limiting the Defendants' scope of representation of or professional responsibilities to the Daces.

42.    At the time of Defendant Bartholomew's filing of the Petition on behalf of the Daces, Donald Dace had a valid medical malpractice or negligence claim against Midwest Radiology, Inc and Drs. Walter Holloman and Solomon, residents and licensed physicians in the

- 8 -

State of Missouri on the staff of Midwest Radiology, Inc., for the following act or omission:

> a. negligently and carelessly misreading radiographic films taken of Donald Dace.

43. At the time of Defendant Bartholomew's filing of the Petition on behalf of the Daces, Donald Dace had a valid medical malpractice or negligence claim against Parkcrest Surgical Associates, Inc and Dr. Mark A. Ludwig, a resident and licensed physician in the State of Missouri on the staff of Parkcrest Surgical Associates, Inc., for one or more of the following acts or omissions:

> a. negligently and carelessly failing to diagnose a perforated diverticulitis;
>
> b. negligently and carelessly performing unnecessary surgery on Donald Dace.

44. At the time of Defendant Bartholomew's filing of the Petition on behalf of the Daces, Donald Dace had a valid medical malpractice or negligence claim against Parkway Pathology Group, Inc. and Dr. Nasreen Qazi, a resident and licensed physician in the State of Missouri on the staff of Parkway Pathology Group, Inc., for the following act or omission:

> a. negligently and carelessly diagnosed a perforated appendix on pathology slides when there was no indication that the appendix was perforated.

45. At the time of Defendant Bartholomew's filing of the Petition on behalf of the Daces, Sue Dace had a valid loss of consortium claim against one or more of the above referenced Medical Malpractice Defendants arising out of the medical malpractice committed against Donald Dace.

46. As a direct and proximate result of the negligent acts or omissions of the Medical

- 9 -

Malpractice Defendants, Donald Dace suffered an abdominal abscess and numerous complications; Donald Dace had sustained constant pain and suffering, disability and disfigurement, both past and future; Donald Dace incurred and was likely to become liable to pay great sums of money for medical and hospital treatment, and was likely to become liable in the future for additional sums in the future, all to his damage in a substantial amount.

47.     As a direct and proximate result of the Medical Malpractice Defendants' negligent acts and omissions, Donald Dace lost and would continue to lose and will continue to lose wages.

48.     As a direct and proximate result of the Medical Malpractice Defendants' negligent acts and omissions, Donald Dace has suffered, continues to suffer, and is likely to suffer in the future extreme physical and psychological trauma, injury, pain, distress, and suffering.

49.     As a direct and proximate result of the Medical Malpractice Defendants' negligent acts and omissions Donald Dace incurred past medical and hospital expenses exceeding $160,000 and will continue to incur additional medical and hospital expenses.

50.     At the time Defendant Bartholomew filed the Petition on behalf of the Daces against the Medical Malpractice Defendants in the Circuit Court of St. Louis City, there was no evidentiary or legal basis for believing that the Circuit Court of St. Louis City was the proper legal venue.

51.     At the time Defendant Bartholomew filed the Petition on behalf of the Daces in the Circuit Court of St. Louis City the Defendants knew or reasonably should have known that Donald Dace had incurred lost wages and Defendant Bartholomew knew, by reason of his consultation with Dr. Alan Baker, the injuries sustained by Donald Dace would likely result in

- 10 -

future lost wages.

52. When Defendant Bartholomew filed the Petition on behalf of the Daces in the Circuit Court of St. Louis City the Defendants knew or reasonably should have known from review of the medical records that Donald Dace suffered severe physical and psychological injuries as a result of the medical malpractice committed against him.

53. On Motion by the Medical Malpractice Defendants and without objection from Defendant Bartholomew, the Circuit Court of St. Louis City on October 11, 2000 found that Defendant Bartholomew had filed the Daces case in the legally improper venue of St. Louis City and ordered the case transferred to the legally proper venue of the Circuit Court of St. Louis County, as required by law.

54. On January 31, 2001, Defendant Bartholomew voluntarily dismissed the Daces' case in the Circuit Court of St. Louis County without prior written notice to the Daces or Defendant Norsigian.

55. Prior to November 2001, Defendant Bartholomew did not inform Defendant Norsigian of his intent to withdraw and take a voluntary dismissal of the Daces' case or that he had in fact voluntarily dismissed the Daces' case.

56. Ten (10) months after taking a voluntary dismissal of the Daces' case, Defendant Bartholomew, by letter dated November 29, 2001 addressed to Defendant Norsigian and copied to the Daces, misrepresented to the Daces the date he had taken a voluntary dismissal of their case as March 12, 2001 and notified the Daces that he was withdrawing from their representation.

57. Defendant Bartholomew never informed the Daces that he had any doubts that

- 11 -

March 12, 2001 date represented in his November 29, 2001 letter to the Daces was not the correct date on which he had taken the voluntary dismissal of their case.

58.     Some time in early December 2001, and shortly after receiving the November 29, 2001, letter from Defendant Bartholomew, the Daces telephoned Defendant Norsigian who misrepresented in their telephone conversation the date of the voluntarily dismissed of the Daces' case as being March 12, 2001.

59.     In their December 2001 telephone conference with Defendant Norsigian, the Daces informed Defendant Norsigian that they did not consent to or have knowledge about the voluntary dismissal of their case until they received Defendant Bartholomew's November 29, 2001 letter.

60.     Defendant Norsigian never informed the Daces or documented in his office file that he had any doubts that March 12, 2001 was the correct date on which the Daces' case had been voluntarily dismissed.

61.     Defendant Norsigian relied upon the incorrect date of March 12, 2001 told to him by Defendant Bartholomew as the date Defendant Bartholomew actually voluntarily dismissed the Daces' case.

62.     Defendant Norsigian misrepresented to the Daces in the above referenced December 2001 telephone conversation that they had one year from March 12, 2001 to refile their case.

63.     The Daces relied upon the advice and misrepresentations of the Defendants that their case had been voluntarily dismissed on March 12, 2001 and that they had one year from March 12, 2001 to refile their Petition.

- 12 -

64.     After receipt of the November 29, 2001 letter from Defendant Bartholomew,
Defendant Norsigian and Donald Dace did not mutually agree to void or terminate the written
July 22, 1998 "Contract For Legal Services" until after the one-year statute of limitations for
refiling the Daces case expired on January 31, 2002.

65.     After receipt of the November 29, 2001 letter and obtaining the Daces' case file
from Defendant Bartholomew, Defendant Norsigian persuaded the Daces to consent to his
finding a replacement attorney for Defendant Bartholomew to participate with Defendant
Norsigian in representing the Daces and to refile and prosecute the Daces' case.

66.     The Daces relied upon the misrepresentation of the Defendants that the date of the
voluntary dismissal of their case was March 12, 2001 in consenting to Defendant Norsigian's
retaining their file and continuing under the July 22, 1998 "Contract For Legal Services" while
he located another attorney to replace Defendant Bartholomew in their representation.

67.     After receipt of the November 29, 2001 letter from Defendant Bartholomew,
Defendant Norsigian did not prepare or request Donald Dace to execute an amendment to the
July 22, 1998 "Contract For Legal Services" or a new "Contract For Legal Services" limiting the
scope of Defendant Norsigian's legal representation or responsibilities as contracted for by
Donald Dace in July 22, 1998.

68.     After receipt of the November 29, 2001 letter from Defendant Bartholomew,
Defendant Norsigian did not document in his office files or provide written notice to the Daces
that he was surrendering his fee interest in their case until February 21, 2002.

69.     After receipt of the November 29, 2001 letter from Defendant Bartholomew,
Defendant Norsigian disclosed to the Daces for the first time that he would not file or refile their

- 13 -

case.

70.    In an attempt to find a replacement for Defendant Bartholomew, Defendant Norsigian sent the Daces' case file to his friend, Attorney Phillip Smith, in Kansas City, Missouri, who agreed to review the Daces' file to determine if he would be willing to refile the Daces case after Defendant Norsigian misrepresented to him that the Daces' case had been voluntarily dismissed on March 12, 2001.

71.    On January 31, 2002, the one-year statute of limitations to refile the Daces' case expired without the knowledge of the Defendants, Attorney Phillip Smith, or the Daces.

72.    Prior to the expiration of the one-year statute to refile the Daces' case, neither of the Defendants knew or advised the Daces of the correct date on which the Daces' case was voluntarily dismissed.

73.    On February 20, 2002 and after the one-year statute of limitations had run on the refiling of the Daces' case, Attorney Phillip Smith returned to Defendant Norsigian the Daces' file declining to represent the Daces and refile their case.

74.    On February 21, 2002, Defendant Norsigian for the first time gave written notice to the Daces of his withdrawal from their representation, surrendered to the Daces their complete file, told the Daces they should have another attorney independently confirm the date of voluntary dismissal, and again misrepresented to the Daces that their case was voluntarily dismissed on March 12, 2001.

75.    After Defendant Norsigian withdrew from representing the Daces and surrendered to the Daces their case file, they immediately sought assistance from Attorney Nicholas B. Carter who refiled their case in the legally proper venue of the Circuit Court of St. Louis County on

- 14 -

March 11, 2002.

76.     The Medical Malpractice Defendants promptly filed Motions for Summary Judgment on the basis that the Daces' Petition was untimely refiled because it had been voluntarily dismissed on January 31, 2001 and the time for refiling expired on January 31, 2002.

77.     The Circuit Court granted the Medical Malpractice Defendants' Motions for Summary Judgment on July 19, 2002 thereby forever barring the Daces from prosecuting their claims and recovering the value of their damages arising out of the medical malpractice committed against Donald Dace.

## COUNT I
### (Legal Malpractice)

78.     Paragraphs 1-77 are hereby incorporated by reference as paragraph 78.

79.     At all times relevant herein, the Defendants owed a duty to the Daces while representing them to exercise the degree of skill and diligence ordinarily used under the same or similar circumstances by members of the legal profession.

80.     Defendants breached their duty to the Daces by committing one or more of the following acts or omissions:

>          a.      Defendants advised the Daces of the incorrect date on which their Petition was voluntarily dismissed and on which the one-year statute of limitations for refiling of the Daces' case began to run.

>          b.      Defendant Bartholomew failed to plead properly and expressly the past and future wage loss of Donald Dace in the Petition he prepared and filed on behalf of the Daces.

- 15 -

      c.      Defendant Bartholomew failed to plead properly and expressly the

psychological injuries sustained by Donald Dace as a result of the medical

malpractice committed against him.

      d.      Prior to the expiration of the one-year statute of limitations to refile the

Daces' case, Defendant Bartholomew did not determine the correct date on

which he took a voluntary dismissal of the Daces' case.

      e.      Prior to the expiration of the one-year statute of limitations to refile the

Daces' case, Defendant Norsigian did not attempt to confirm the correct

date of voluntary dismissal of the Daces' case.

      f.      Defendants failed to make a prejudgment settlement demand entitling the

Daces to prejudgment interest if the Daces obtained a judgment in excess

of their demand.

      g.      Defendants failed to competently represent the Daces.

81.      But for the negligent acts or omissions of the Defendants, the Daces' claims

would have been successfully prosecuted and a judgment in favor of the Daces would have been

obtained and collected for past and future lost wages, permanent disability, past and future pain

and suffering, permanent disfigurement, past and future physical and psychological trauma and

injuries, mental anguish, past and future medical expenses, loss of consortium, and loss of

enjoyment of life in an amount substantially in excess of $75,000, excluding costs and interest.

82.      As a direct and proximate cause of the Defendants' negligent acts or omissions,

the Daces lost the substantial value of their claims including pre and post judgment interest.

83.      As a direct and proximate cause of the Defendants' negligent acts or omissions,

Donald Dace has suffered and continues to suffer great emotional pain and suffering and mental anguish.

84. As a direct and proximate case of the Defendants' negligent acts or omissions, Susan has suffered and continues to suffer loss of consortium damages and great emotional pain and suffering and mental anguish.

85. As a direct and proximate cause of Defendants' breach of their respective duties in representing the Daces, the Daces have suffered damages in the amount of the value of their claims against the Medical Malpractice Defendants; costs and expenses including, without limitation, costs and expenses for legal experts and other trial preparation unnecessary in the medical malpractice case; attorney fees including, without limitation, 11 2/3% more fees than the 33 1/3% agreed to in the "Contract For Legal Services" in order to collect the value of the damages of their lost claims from Defendants; and, great and extreme mental anguish.

WHEREFORE, the Daces respectfully request this Court to enter judgment against the Defendants, Hrant Norsigian, Jr. and Joseph Bartholomew, jointly and severally, in an amount in substantially in excess of $300,000 for the value of their lost claims and for additional damages for pre and post judgment interest, costs of suit, consequential damages, additional costs and expenses of this case, aggravation of the physical and psychological injuries sustained by Donald Dace, suffering and extreme anguish of the Daces, on ongoing loss of consortium suffered and continuing to be suffered by Susan Dace and such further and additional relief as to which the Daces are entitled or this Court deems fit and proper under the facts of this case.

## COUNT II
(Negligent Misrepresentation)

86. Paragraphs 1-85 are hereby incorporated by reference as paragraph 86.

- 17 -

87. In the course of representing the Daces, Defendant Bartholomew misrepresented to the Daces the date on which he voluntarily dismissed their case and on which the one-year statute of limitations for the refilling of their case started to run.

88. In the course of representing the Daces, the Defendant Norsigian misrepresented to the Daces the date on which their case was voluntarily dismissed and on which the one-year statute of limitations for the refilling of their case started to run.

89. In the course of representing the Daces, the Defendants failed to disclose information to the Daces concerning their representation, which the Daces were entitled to know because of the fiduciary relationship between the Daces and the Defendants.

90. In the course of representing the Daces, the Defendants failed to exercise reasonable care in confirming, documenting, and/or determining the correct date of the voluntary dismissal of the Daces' case prior to the expiration of the one-year statute of limitations to refile the case.

91. In the course of representing the Daces and to assist them in prosecuting their claims arising out of the medical malpractice committed against Donald Dace, the Defendants advised the Daces about the date of the voluntary dismissal of their case that was the first day of one-year statute of limitations for refiling of their case.

92. The Daces justifiably relied upon the misrepresentations of the Defendants including, without limitation, the misrepresentation by the Defendants of the date of March 12, 2001 as the date on which the Daces' case had been voluntarily dismissed.

93. Due to the reliance by the Daces on the negligent misrepresentations by the Defendants, the Daces refiled their case on March 11, 2002 after the expiration of the one-year

- 18 -

statute of limitations on January 31, 2002 and lost the value of their claims arising out of the medical malpractice committed against Donald Dace including pre and post judgment interest.

94. As a direct and proximate cause of Defendants' misrepresentations, the Daces have suffered damages in the amount of the value of their claims against the Medical Malpractice Defendants; costs and expenses including, without limitation, costs and expenses for legal experts and other trial preparation unnecessary in the medical malpractice case; and attorney fees including, without limitation, 11 2/3% more fees than the 33 1/3% agreed to in the "Contract For Legal Services" in order to collect the value of the damages of their lost claims from Defendants.

95. The losses sustained by the Daces due to the negligent misrepresentation of the date of voluntary dismissal by Defendants are substantially in excess of $75,000, exclusive of interest and costs.

WHEREFORE, the Daces respectfully request this Court to enter judgment against the Defendants, Hrant Norsigian, Jr. and Joseph Bartholomew, jointly and severally, in an amount in substantially in excess of $300,000 for the value of their lost claims and for additional damages for pre and post judgment interest, costs of suit, consequential damages, additional costs and expenses of this case, aggravation of the physical and psychological injuries sustained by Donald Dace, suffering and extreme anguish of the Daces, on ongoing loss of consortium suffered and continuing to be suffered by Susan Dace and such further and additional relief as to which the Daces are entitled or this Court deems fit and proper under the facts of this case.

## COUNT III
(Breach of Fiduciary Duty)

96. Paragraphs 1-95 are hereby incorporated by reference as paragraph 96.

97. From the time his representation commenced in 1999, until his withdrawal from the representation of the Daces by letter dated November 29, 2001, Defendant Bartholomew owed the Daces a fiduciary duty.

98. From the time his representation commenced on July 22, 1998, until his withdrawal from the representation of the Daces by written Receipt dated February 21, 2002, Defendant Norsigian owed the Daces a fiduciary duty.

99. Defendants each breached their respective fiduciary duties owed to the Daces by placing their own interests above those of the Daces.

100. The Defendants breached their respective fiduciary duties owed to the Daces in one or more of the following respects:

> a. Defendants failed to disclose to the Daces their fee sharing arrangements that placed the Defendants' own pecuniary interests ahead of the Daces' best interests of by providing a financial incentive to Defendant Norsigian to refer the Daces' case to Defendant Bartholomew even though it was not in the Daces' best interests to be represented by a lawyer such as Defendant Bartholomew who refused to file their case or represent them in the proper legal venue.

> b. In persuading Donald Dace to enter into a "Contract For Legal Services" for a fee of 33 1/3%, Defendant Norsigian concealed from Donald Dace his level of experience and competence in handling medical malpractice cases.

> c. Defendants failed to disclose to the Daces their fee sharing arrangements

- 20 -

that created a conflict between the best interests of the Daces and the pecuniary interests of the Defendants by providing financial disincentive for Defendants to do work or assume joint responsibility for the representation of the Daces on their case.

d.   Without the informed consent of the Daces, Defendant Bartholomew agreed to pay Defendant Norsigian for persuading the Daces to consent to his participation in their representation knowing that Defendant Norsigian would not act in accordance with the Code of Professional Conduct or fulfill his contractual obligations and responsibilities owed to the Daces.

f.   Without the informed consent of the Daces, Defendant Norsigian agreed to pay Defendant Bartholomew a share of the fees for persuading the Daces to consent to his participation in their representation knowing that Defendant Bartholomew would not act in accordance with the Code of Professional Conduct or fulfill his contractual obligations and responsibilities owed to the Daces.

g.   Defendants failed to abide by the Daces' decisions concerning the objectives of their representation by surreptitiously and without the Daces' informed consent limiting the scope of their legal representation and responsibilities as contracted for by Donald Dace on July 22, 1998 when he executed the "Contract For Legal Services".

h.   Defendants failed to keep the Daces informed on matters concerning their representation and the progress of their case.

- 21 -

i.     Defendants failed to explain matters to the Daces to the extent necessary to allow them to make informed decisions regarding their representation.

101.    The breaches by the Defendants of their respective fiduciary duties owed to the Daces were a substantial factor in and a proximate cause of the Daces losing the value of their claims arising out of the medical malpractice committed against the Daces including, without limitation, pre and post judgment interest.

102.    As a direct and proximate case of the Defendants' breaches of their fiduciary duties to the Daces, Donald Dace has suffered and continues to suffer great emotional pain and suffering and mental anguish.

103.    As a direct and proximate case of the Defendants' breaches of their fiduciary duties to the Daces, Susan has suffered and continues to suffer loss of consortium damages and great emotional pain and suffering and mental anguish.

104.    As a direct and proximate cause of Defendants' breaches of their fiduciary duties owed to the Daces, the Daces have suffered damages in the amount of the value of their claims against the Medical Malpractice Defendants; costs and expenses including, without limitation, costs and expenses for legal experts and other trial preparation unnecessary in the medical malpractice case; attorney fees including, without limitation, 11 2/3% more fees than the 33 1/3% agreed to in the "Contract For Legal Services" in order to collect the value of the damages of their lost claims from Defendants; and, great and extreme mental anguish.

105.    The losses and damages sustained by the Daces due to the breaches of Defendants' respective fiduciary duties are substantially in excess of $75,000, exclusive of interest and costs.

WHEREFORE, the Daces respectfully request this Court to enter judgment against the Defendants, Hrant Norsigian, Jr. and Joseph Bartholomew, jointly and severally, in an amount in substantially in excess of $300,000 for the value of their lost claims and for additional damages for pre and post judgment interest, costs of suit, consequential damages, additional costs and expenses of this case, aggravation of the physical and psychological injuries sustained by Donald Dace, suffering and extreme anguish of the Daces, on ongoing loss of consortium suffered and continuing to be suffered by Susan Dace and such further and additional relief as to which the Daces are entitled or this Court deems fit and proper under the facts of this case.

## COUNT IV
### (Breach of Contract)

106.    Paragraphs 1-105 are incorporated herein by reference as paragraph 106.

107.    Donald Dace and Defendant Norsigian entered into a written "Contract For Legal Services" wherein Defendant Norsigian agreed to provide competent representation of Donald Dace on his claim for medical malpractice in exchange for receipt of 33 1/3% of any recovery.

108.    Defendant Bartholomew agreed to participate in the representation of Donald Dace under the July 22, 1998, "Contract For Legal Services" entered into between Defendant Norsigian and Donald Dace.

109.    Donald Dace performed all conditions precedent under the "Contract For Legal Services".

110.    Defendants breached the "Contract For Legal Services" by providing incompetent representation of Donald Dace.

111.    As a direct and proximate cause of Defendants' breach of the "Contract For Legal Services", the Daces lost the value of their claims arising from the medical malpractice

- 23 -

committed against Donald Dace.

112. As a direct and proximate cause of Defendants' breach of the "Contract For Legal Services" the Daces have suffered damages in the amount of the value of their claims against the Medical Malpractice Defendants; costs and expenses including, without limitation, costs and expenses for legal experts and other trial preparation unnecessary in the medical malpractice case; and attorney fees including, without limitation, 11 2/3% more fees than the 33 1/3% agreed to in the "Contract For Legal Services" in order to collect the value of the damages of their lost claims from Defendants.

113. As a direct and proximate cause of Defendants' breach of the "Contract For Legal Services" the Daces have suffered consequential damages in the loss of pre and post judgment interest.

WHEREFORE, the Daces respectfully request this Court to enter judgment against the Defendants, Hrant Norsigian, Jr. and Joseph Bartholomew, jointly and severally, in an amount in substantially in excess of $300,000 for the value of their lost claims and for additional damages for pre and post judgment interest, costs of suit, consequential damages, additional costs and expenses of this case, aggravation of the physical and psychological injuries sustained by Donald Dace, suffering and extreme anguish of the Daces, on ongoing loss of consortium suffered and continuing to be suffered by Susan Dace and such further and additional relief as to which the Daces are entitled or this Court deems fit and proper under the facts of this case.

**REINERT & ROURKE, P.C.**

By: _____

    John W. Rourke, #4216
    812 North Collins
    Laclede's Landing
    St. Louis, MO  63102-2174
    (314) 621-5743 Telephone
    (314) 621-8071 Facsimile